240 F.2d 241
 COMPANIA ANONIMA VENEZOLANA DE NAVEGACION, Claimant of THE
Steamship CIUDAD DE MARACAIBO, Appellant,
v.
BALTIMORE STEAM PACKET COMPANY, Owner and Operator of THE
Steamship CITY OF NORFOLK, Appellee.
 No. 7309.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 9, 1956.
Decided Jan. 3, 1957.
 
 Renato C. Giallorenzi, New York City (Robert H. Williams, Jr. Baltimore, Md., and Paul M. Jones, New York City, on brief), for appellant.
 Karl F. Steinmann, Baltimore, Md. (Robert A. Bley and Terrence E. Burke, Baltimore, Md., on brief), for appellee.
 Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This appeal is taken from a decree in which it was held that the steamship Ciudad de Maracaibo was solely to blame for a collision with the steamship City of Norfolk, which occurred at 8:10 P.M., on October 5, 1954, under favorable weather conditions in the Craighill Channel in the Chesapeake Bay near the Port of Baltimore. A libel in admiralty was filed by the owner of the City of Norfolk against the Ciudad de Maracaibo and her owners, and a cross-libel was filed by the owner of the Ciudad de Maracaibo against the City of Norfolk and her owner. The question for decision is whether the District Judge was clearly wrong in finding the Ciudad de Maracaibo solely at fault.
 
 
 2
 The City of Norfolk is a passenger and cargo vessel of 2379 gross tons, 297.5 feet in length. Her full speed is 14 knots. She left Baltimore at 6:35 P.M. with 100 passengers and 620 tons of cargo aboard and was southbound on her nightly trip to Norfolk, Virginia when the accident occurred.
 
 
 3
 The Ciudad de Maracaibo is a Venezuelan cargo vessel of 3940 gross tons, 420 feet in length. Her full speed is 15 knots. She was northbound to Baltimore in partial ballast with 120 tons of cargo aboard.
 
 
 4
 The Craighill Channel constitutes the approach from the south via the Chesapeake Bay to the Patapsco River and the Port of Baltimore. It is 2.8 miles long and 600 feet wide and runs north and south near the west shore of the Bay between the mouths of the Patapsco and Magothy Rivers. It connects at the north end with the Craighill Angle Channel, which runs northwest to meet the Cutoff Channel at the mouth of the Patapsco River. At the south the Craighill Channel connects with the funnel-shaped Craighill Entrance Channel, which extends for 1.5 miles south by east and leads to the open waters of the Bay. Craighill Channel is marked by buoys on either side, spaced 7/10 mile from each other. The buoys at the northern entrance are 13C and 14C and those at the southern entrance 5C and 6C.
 
 
 5
 The Judge found that the City of Norfolk passed buoy 13C at the northwest corner of the Channel at 7:59 P.M. and proceeded southwardly on her righthand side of the Channel; that a few minutes later, at 8:05 or 8:06 P.M., the Ciudad de Maracaibo, which had been proceeding north-northwest in the Craighill Entrance, passed to the west of the buoy 6C, and continued in a course west-of-north into the west or southbound side of the Channel. At that time the City of Norfolk had reached a point about half-way between the northern and southern entrances to the Channel. Shortly after 8:05 P.M. the pilot of the Ciudad de Maracaibo, noticing the City of Norfolk, ordered his helm to starboard and two minutes later hard to starboard. As the result of these maneuvers the Ciudad de Maracaibo cut sharp right toward the east in front of the City of Norfolk, about one minute before the collision occurred. When the rudder change hard to starboard was made, the pilot of the Ciudad de Maracaibo sounded one blast of the whistle indicating a port-to-port passage and then immediately ordered the engines to be reversed at full speed. At about the same time the master of the City of Norfolk, being confused by the signal of the Ciudad de Maracaibo, also put her engines full speed astern, but it was too late and the bow of the City of Norfolk struck the port side of the Ciudad de Maracaibo about 100 feet from the bow as she was endeavoring to get back to her side of the Channel. The Judge found that the collision took place in the west half of the Channel and the witnesses for the City of Norfolk testified that the point of collision was about 100 feet east of buoy 7C. See, D.C., 142 F.Supp. 273.
 
 
 6
 Upon these findings it needs no argument to demonstrate that the Ciudad de Maracaibo was solely to blame; and the findings are supported not only by testimony of the master, the second mate and the helmsman of the City of Norfolk, all of whom testified before the District Judge, but also to some extent by the master of the Red Star, a disinterested witness. The Red Star was bound south in the Craighill Channel about 2 miles ahead of the City of Norfolk and was expecting the City of Norfolk to pass so that she could follow her down the Bay. The master of the Red Star, looking back from time to time, noticed that the City of Norfolk was on her righthand side of the Channel, and he also passed the Ciudad de Maracaibo going north near the south entrance to the Channel and noticed that she was so near the center of the Channel at that time that he took his ship outside the Channel to the west in order to avoid her.
 
 
 7
 The Judge rejected the testimony of the pilot in charge of the Ciudad de Maracaibo, who had come aboard at Cape Henry for a trip up the Bay and who was the principal witness for the ship. His story was that when his ship passed the turning buoy 6C and was on the northbound side of the Channel he noticed the City of Norfolk in the neighborhood of buoy 9C on the southbound side of the Channel showing both red and green lights, and that when his ship was between buoys 6C and 8C the City of Norfolk shut out her red light and cut directly in front of the Ciudad de Maracaibo, heading southeasterly as if she intended to run outside the Channel on the eastern side. The Judge found that the testimony of this witness was unworthy of belief since it was inconsistent with his evidence at an earlier Coast Guard hearing, and it also varied from time to time in important particulars as he was examined in the trial in the District Court. Besides, no reason was suggested for the City of Norfolk to leave here safe position on her righthand side of the Channel for shallower waters outside of its eastern boundary.
 
 
 8
 The action of the Ciudad de Maracaibo is also difficult to understand, but explanation may perhaps be found in the testimony of her helmsman who said that after passing buoy 6C he steered toward a greenish light. There is such a light near Bodkin Point at the mouth of the Patapsco River, which is almost in a direct line with the course of the Entrance Channel, whereas the range lights of the Craighill Channel, which are set for a north and south course, are brilliant white lights. If the Ciudad de Maracaibo was steered toward the Bodkin light, her course would have taken her to the west side of the Channel directly in front of the City of Norfolk.
 
 
 9
 It is contended by the appellants that the City of Norfolk contributed to the collision because she was too slow in reversing her engines when the collision was imminent and because she failed to respond to the single blast of the Ciudad de Maracaibo as the vessels approached one another. We are satisfied, however, that there is substantial evidence to support the finding of the District Judge, that the City of Norfolk reversed her engines as quickly as did the Ciudad de Maracaibo and that the master of the City of Norfolk was naturally bewildered by the single blast from the Ciudad de Maracaibo, indicating a port-to-port passage when such passage was impossible. Moreover, there was the testimony of the helmsman of the City of Norfolk, which was corroborated by the testimony of the pilot of the Ciudad de Maracaibo, that the City of Norfolk sounded danger signals when the Ciudad de Maracaibo gave the passing signal. Obviously danger signals were appropriate under the circumstances.
 
 
 10
 Affirmed.